# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Darnell A. Allen, Jr.,**
**Petitioner Below, Petitioner**

**vs.)  No. 16-1082** (Mineral County 06-C-118)

**Ralph Terry, Acting Warden,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**May 14, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Darnell A. Allen Jr., by counsel J. Brent Easton, appeals the Circuit Court of Mineral County's November 1, 2016, order denying his second petition for writ of habeas corpus following his conviction by a jury of first-degree murder. Ralph Terry, Acting Warden, Mount Olive Correctional Complex, by counsel Shannon Frederick Kiser, filed a response in support of the circuit court's order.[1] On appeal, petitioner argues that the circuit court erred in denying him habeas relief because of certain issues raised by the serology evidence at trial and that he was denied due process by the circuit court's failure to timely hear his petition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 1995, petitioner was convicted by a jury in the Circuit Court of Mineral County of the first-degree murder of Arthur Samuel Smith Jr., who was beaten to death with a blunt instrument in the early morning hours of January 8, 1994, in Keyser, West Virginia.[2] Petitioner and his codefendant were identified as the perpetrators by a witness who, from the upstairs window of his apartment, saw two black men in dark bulky coats striking something on the ground with a stick or club near a church. The witness called police who, when they arrived,

---

[1]The warden at Mt. Olive Correctional Complex has changed to Ralph Terry, Acting Warden, and the Court has made this substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

[2]*See State v. Horton*, 203 W.Va. 9, 506 S.E.2d 46 (1998) (affirming the murder convictions of petitioner and his codefendant).

discovered the victim's body. Petitioner and his codefendant were spotted in the area near the crime scene and were picked up by police because they matched the eyewitness's description of the suspects.

Police tested articles of clothing that petitioner and his codefendant wore that night. Trooper H.B. Myers of the West Virginia State Police conducted serological testing on a piece of flesh that was found on petitioner's baseball cap and found that it had the same genotype as the victim. Serological testing by Trooper Myers on the codefendant's jeans was inconclusive, but Brian Wraxall of the Serological Research Institute in California identified Polymerase Chain Reaction ("PCR") markers that were consistent with the victim's DNA from blood found on the jeans and that occur in approximately one in 6.25 million persons in the Caucasian population.[3]

Thereafter, petitioner's direct appeal was denied by this Court.[4] *See* n.2. In April of 1999, petitioner filed a petition for writ of habeas corpus. Following an omnibus evidentiary hearing, the circuit court denied the petition by order entered in February of 2004. Thereafter, petitioner petitioned for appeal, and this Court refused the same.

In October of 2006, petitioner filed his second petition for writ of habeas corpus. Thereafter, the circuit court entered an order appointing counsel to "represent [petitioner] . . . on the limited issue of the evidence presented by Trooper Myers during the criminal trial . . . in accordance with Zain III." *See In re Renewed Investigation of State Police Crime Laboratory, Serology Division* ("*Zain III*"), 219 W.Va. 408, 633 S.E.2d 762 (2006).[5]

Meanwhile, petitioner, along with his codefendant, filed a joint motion for DNA testing of the codefendant's boots or pants and petitioner's cap, pursuant to West Virginia Code § 15-28-14. They argued that an independent DNA test had never been conducted in this case; that there was possible contamination of the serological evidence when it was done in 1994; that testing procedures may not have been appropriately followed when the testing was done; that Trooper Myers is alleged to have provided false serology evidence in another, unrelated criminal case; and that DNA testing is relevant to their claims that they are innocent of the crime for which they were convicted. The State filed a response opposing the request for DNA testing.

A hearing was conducted in August of 2016, approximately ten years after petitioner filed

---

[3]The victim was Caucasian.

[4]At trial, in addition to the serological and DNA evidence, the State introduced evidence that, a few nights before the murder, petitioner asked another man if he could borrow his baseball bat; that the man agreed; and that the bat went missing the next day. (The murder weapon was never found). The evidence also revealed that, a few months before the crime, petitioner threatened the victim because the victim had kissed his teenage sister on the cheek. *See Horton*, 203 W.Va. at 14, 506 S.E.2d at 51.

[5]Petitioner's habeas petition and that of his codefendant were merged for purposes of an evidentiary hearing.

his second request for habeas relief. Trooper Myers was the only witness. By order entered November 1, 2016, the circuit court denied petitioner's request for habeas relief and for DNA testing. This appeal followed.

Our review of the circuit court's order denying petitioner's petition for a writ of habeas corpus is governed by the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

In his first assignment of error, petitioner argues that the circuit court erred in failing to grant him habeas relief. He contends that he presented evidence that Trooper Myers has a history of intentional misrepresentation of serology test results and methods and that he was entitled to a new trial. In syllabus point four of *Zain III*, this Court held as follows:

> A prisoner against whom a West Virginia State Police Crime Laboratory serologist, other than Fred Zain, offered evidence and who challenges his or her conviction based on the serology evidence is to be granted a full habeas corpus hearing on the issue of the serology evidence. The prisoner is to be represented by counsel unless he or she knowingly and intelligently waives that right. The circuit court is to review the serology evidence presented by the prisoner with searching and painstaking scrutiny. At the close of the evidence, the circuit court is to draft a comprehensive order which includes detailed findings as to the truth or falsity of the serology evidence and if the evidence is found to be false, whether the prisoner has shown the necessity of a new trial based on the five factors set forth in the syllabus of *State v. Frazier,* 162 W.Va. 935, 253 S.E.2d 534 (1979).

219 W.Va. at 409, 633 S.E.2d at 763.[6]

---

[6]In 1993, an investigation revealed that Fred Zain, a serologist in the State Police Crime Lab, had "intentionally and systematically [given] inaccurate, invalid, or false testimony or reports" in criminal prosecutions. *Zain III*, 219 W.Va. at 410, 633 S.E.2d at 764 (citing *In Matter of West Virginia State Police Crime Laboratory* ("*Zain I*"), 190 W.Va. 321, 438 S.E.2d 501 (1993)). As a result of this investigation, this Court concluded that, as a matter of law, any evidence offered by Zain in any criminal prosecution was presumptively

> "invalid, unreliable, and inadmissible in determining whether to award a new trial in any subsequent habeas corpus proceeding. The only issue in any habeas corpus

(continued . . . )

Petitioner argues that he satisfied the five factors set forth in *Frazier* such that his habeas request should have been granted and a new trial ordered. In the syllabus of *Frazier*, this Court held:

"A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side." Syllabus Point 1, *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894).

162 W.Va. at 935-36, 253 S.E.2d at 534-35. Importantly, this Court has declared that "all five elements must be satisfied." *Id.* at 941, 253 S.E.2d at 537.

First, petitioner argues that Trooper Myers presented questionable testimony at trial regarding the techniques employed in testing materials found on the garments from petitioner and his codefendant. In support of this claim, petitioner argues that, at the habeas hearing, Trooper Myers testified that serologists from the crime lab habitually and intentionally testified to testing techniques by using terminology associated with other techniques and failed to definitively deny that he testified falsely at petitioner's trial. Petitioner further argues that,

---

proceeding would be whether the evidence presented at or prior to trial or prior to the entry of a guilty plea, independent of the forensic evidence presented by Zain, would have been sufficient to support the verdict or plea."

*Zain III*, 219 W.Va. at 410, 633 S.E.2d at 764 (quoting *Zain I*, 190 W.Va. at 340, 438 S.E.2d at 520.).

Subsequently, this Court issued *In Matter of West Virginia State Police Crime Lab* ("*Zain II*"), 191 W.Va. 224, 445 S.E.2d 165 (1994), regarding whether serologists other than Fred Zain falsified evidence in criminal prosecutions as Zain had done. We concluded that, although there were occasional minor errors made, they "did not significantly compromise the criminal prosecutions in which the serologists offered evidence." *Zain III*, 219 W.Va. at 411, 633 S.E.2d at 765. This Court thus concluded that serology reports prepared by crime lab employees other than Zain "are not subject to the invalidation and other strictures contained in" *Zain I. Zain III*, 219 W.Va. at 411, 633 S.E.2d at 765 (quoting *Zain II*, 191 W.Va. at 225, 445 S.E.2d at 166, at Syl. Pt. 3, in part). *Zain III* resulted from yet another investigation into allegations of nonexistent serology test results and trial testimony by serologists other than Fred Zain. *See* discussion, *infra.*

according to a report cited in *Zain III*, Trooper Myers, an assistant to Zain, was one of the serologists who reported and testified to "nonexistent serology testing[,]" and that the circuit court recognized Trooper Myers had a reputation for falsifying evidence when it found, in its order appointing counsel, that the circuit court "reviewed the [p]etitioner's prior [h]abeas [c]orpus filing . . . , wherein [petitioner's] attorney raised the issue of Trooper Myers' testimony and the fact that he was found to have falsified evidence in other cases." In support of these arguments, petitioner relies upon a federal magistrate judge's findings in an unrelated habeas case that Trooper Myers gave false testimony in the underlying trial in that matter and that this is evidence that Trooper Myers gave false testimony in petitioner's criminal trial. *See Thomas v. Trent, Warden,* Civil Action No. 2:98-0912 (S.D.W.Va., April 28, 1999).[7] Additionally, petitioner argues that several inconsistencies in Trooper Myers's testing of the evidence in this case establish that he is entitled to a new trial, including his inconsistencies as to the size of the specimens on the clothing obtained from petitioner and his codefendant; the fact that the specimen from petitioner's baseball cap was consumed during testing; the lack of documentation as to the specimens; and the fact that Trooper Myers concluded that black dye in the codefendant's jeans prevented a conclusive result while Brian Wraxall was able to reach a conclusive result from the same specimen using the same test.

Notwithstanding petitioner's argument to the contrary, we conclude that petitioner failed to satisfy the first factor of *Frazier*—that is, that falsified serological evidence was discovered after trial. First, petitioner failed to show that the evidence was fabricated or contaminated or even that the procedures used in the original testing were invalid or unreliable. Petitioner's arguments are highly speculative and tenuous and not based in fact. *See State ex rel. Burdette v. Zakaib*, 224 W.Va. 325, 332, 685 S.E.2d 903, 910 (2009) ("A defendant simply cannot make unsupported and blanket allegations and expect a circuit court to grant him a new trial."). Also speculative is petitioner's claim that Trooper Myers's testimony was not credible. The circuit court expressly found that Myers's testimony was both credible and believable. The determination of Trooper Myers's credibility as a witness in petitioner's habeas proceeding was properly made by the circuit court, which "had the opportunity to observe, first hand, the demeanor of the witness." *Miller v. Chenoweth*, 229 W.Va. 114, 121, 727 S.E.2d 658, 665 (2012). *See also State v. Cox*, 171 W.Va. 50, 53, 297 S.E.2d 825, 828 (1982) ("It is fundamental that the credibility of witnesses is a matter for the trier of fact to determine.").

Not only did petitioner fail to show that the serological evidence was false, but he also failed to prove that the evidence was discovered after trial. Petitioner does not dispute that Trooper Myers's report and findings were the subject of cross-examination at the criminal trial, which occurred following the investigation into the misconduct by Zain and resulting opinions by this Court. *See Zain I* and *Zain II*. Nor does he dispute that, at trial, Myers testified regarding

---

[7]Upon de novo review of the magistrate judge's findings and recommendations, the United States District Court for the Southern District of West Virginia refused to adopt the same and, instead, denied habeas relief. *See Thomas v. Trent, Warden*, Civil Action No. 2:98-0912 (S.D.W.Va., August 17, 1999).

the potential for contamination and cross-contamination of the evidence, as did Mr. Wraxall, who separately tested the available evidence while being observed by a third, independent expert. Therefore, the serological evidence that is the subject of this appeal was not discovered after trial and, thus, fails to satisfy the first of the five factors set forth in *Frazier*.

Having failed to satisfy one of the *Frazier* factors, petitioner thus failed to establish that he is entitled to a new trial. *See Frazier,* 162 W.Va. at 941, 253 S.E.2d at 537 (requiring that, to obtain relief, "all five elements must be satisfied."). Nonetheless, we briefly note that petitioner also failed to satisfy the *Frazier* factor requiring that "[t]he evidence must be such as ought to produce an opposite result at a second trial on the merits." *Id.* at 935, 253 S.E.2d at 535, at Syllabus, in part. Even if the serological evidence were disregarded as false or tainted, an opposite result at a subsequent trial would not be assured. An eyewitness placed two black men matching descriptions of petitioner and his codefendant at the place where the victim's body was found by police after being beaten to death with a blunt instrument. The men were seen repeatedly striking something on the ground with a club or a stick. Although the murder weapon was never recovered, a few nights before, petitioner asked another man if he could borrow his baseball bat. The man agreed and the bat went missing the next day. The evidence also showed that, a few months before the murder, petitioner threatened the victim because the victim had kissed his sister on the cheek. Given this evidence, the *Frazier* factor requiring that the evidence must produce an opposite result at a subsequent trial is also not satisfied. Thus, for this additional reason, the circuit court did not err in denying petitioner's requests for habeas relief and a new trial.

Finally, we address petitioner's argument that the circuit court failed to timely hear his habeas petition challenging the serology evidence. This Court has held that

> [a] circuit court that receives a petition for a writ of habeas corpus from a prisoner against whom a West Virginia State Police Crime Laboratory serologist, other than Fred Zain, offered evidence, and whose request for relief is grounded on the serology evidence, is to hear the prisoner's challenge in as timely a manner as is reasonably possible.

*Zain III*, 219 W.Va. at 410, 633 S.E.2d at 764, Syl. Pt. 5. Petitioner filed the petition in this matter in October of 2006. However, a hearing was not conducted until August 22, 2016. Petitioner argues that his constitutional right to due process was violated by this unreasonable delay.

On its face, petitioner's habeas request was not heard in a timely manner. However, beyond a bald assertion that "[i]nitially, [the delay] fell squarely on the court[,]" petitioner fails to point to any facts suggesting that either the State or the circuit court caused the delay or that he was somehow prejudiced as a proximate result thereof. *See State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 325, 465 S.E.2d 416, 427 (1995) (finding that "petitioner eventually got his day in court and we are not told of any prejudice suffered by petitioner that was proximately caused by the delay" where habeas hearing was held six years after trial counsel learned of jury tampering in underlying criminal trial). Given the circuit court's conclusion that petitioner's habeas grounds were without merit, we find that any error caused by the delay in the

proceedings, if any error occurred, was harmless.[8]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 14, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Menis E. Ketchum

This case should be remanded to the trial court. There should be an independent DNA test conducted and the possible contamination of the serological evidence explored when the testing was done in 1994 in light of *Zain I* and *Zain II*.

---

[8]In support of this assignment of error, petitioner also concludes that "the failure of [counsel] to proceed with the matter from 2009 through 2016 can be defined as nothing short of ineffective assistance of counsel." This constitutes petitioner's entire argument on this point. Pursuant to Rule 10(c)(7) of the Rules of Appellate Procedure,

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error . . . . The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Because petitioner has cited no authority to support this alleged error, we decline to address the same on appeal.